UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARY TOMKO,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
|  | )   No. |
| **MASINELLI MANAGEMENT AND CONSTRUCTION, INC.,** | )<br>)   JURY TRIAL DEMANDED<br>) |
| Serve at:<br>Registered Agent:  Russell Masinelli<br>1233 West Sixth Street<br>Staunton, IL 62033 | )<br>)<br>)<br>)<br>) |
| **TRITON ENTERPRISES CORP.,** | )<br>) |
| Serve at:<br>Registered Agent:  Arnold G. Franke<br>730 St. Louis Street,<br>Edwardsville, IL 62025 | )<br>)<br>)<br>)<br>) |
| **JOHN MASINELLI, and** | )<br>) |
| Serve at:<br>1233 West Sixth Street<br>Staunton, IL 62088 | )<br>)<br>)<br>) |
| **RUSSELL MASINELLI,** | )<br>) |
| Serve at:<br>711 Alaska Street<br>Staunton, IL 62088 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

**I.   INTRODUCTION**

1. This is an action for declaratory and injunctive relief and damages brought by Plaintiff Mary Tomko, a 60-year old female with multiple severe physical disabilities, pursuant to the Fair Housing Act, as amended ("FHA"), 42 USC § 3601 *et seq*. Defendants Masinelli

1

Management and Construction Inc. ("Masinelli"), Triton Entreprises Corp. ("Triton"), John Masinelli ("John"), and Russell Masinelli ("Russell") discriminated against Plaintiff on the basis of disability by refusing her request to make reasonable modifications to her apartment that are necessary to afford Plaintiff the full enjoyment of the premises. As such, Defendants engaged in a practice of disability discrimination in violation of the FHA.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 USC §§ 1331 and 1343; and 42 USC § 3613. In addition, appropriate declaratory relief is authorized by 28 USC §§ 2201 and 2202.

3. Venue is proper in this Court pursuant to 28 USC § 1391(b) because Defendants Masinelli and Triton are registered Illinois corporations in this judicial district. Further, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Defendant Triton's principal offices are in this judicial district, and Defendant Masinelli Management, John Masinelli, and Russell Masinelli manage the property where Plaintiff lives, which is in this district.

## III.   PARTIES

4. Mary Tomko is a 60-year-old adult female who resides in the Village of Marine in Madison County, Illinois. She has multiple severe physical and mental disabilities, including lupus, Addison's disease, epilepsy, an enlarged heart and a history of heart failure, postural orthostatic tachycardia syndrome ("POTS"), lung and kidney disease, epilepsy, and asthma. Plaintiff also has Post Traumatic Stress Disorder ("PTSD"), which resulted from a traumatic event in 2010. Plaintiff is non-ambulatory and uses a wheelchair for mobility. Plaintiff also requires assistance dressing, feeding, and bathing herself.

5. Defendant Masinelli Management and Construction, Inc. ("Masinelli") is a property management corporation with its principal office in Staunton, Macoupin County, Illinois. Masinelli provides property management services for the rental property where Mary Tomko resides in the Village of Marine, Illinois.

6. Defendant Russell Masinelli ("Russell") is an owner and agent of Masinelli Property Management and Construction.

7. Defendant John Masinelli ("John") is an agent and employee of Masinelli Property Management and may have an ownership interest. Ms. Tomko asked Defendants Masinelli, John, and Russell several times to allow her to make reasonable modifications to her apartment, but Defendants refused.

8. Defendant Triton Enterprises Corp. ("Triton") is an Illinois corporation with its principal office located in Edwardsville, Illinois. Defendant Triton is the owner of the rental property where Mary Tomko resides.

IV.   **STATEMENT OF THE CASE**.

7. Plaintiff moved to her apartment during the summer of 2017. She resides in a complex of three one-story buildings, each with four units. Plaintiff has a two-bedroom apartment with a small bathroom with a bathtub, a kitchen, and a living room. When she moved in, Plaintiff did not suffer from POTS and could ambulate without substantial difficulty in the apartment.

8. The USDA Rural Development Program subsidized Plaintiff's original lease with Defendants. Defendants' agents helped her fill out the USDA subsidy application. In 2019, Defendants informed Plaintiff that USDA would no longer subsidize Plaintiff's rent after January 1, 2020.

9. In October 2019, Ms. Tomko's rent was $351 a month and remained $351 a month until April 2022.

10. In March 2022, Plaintiff received a notice from Defendant Masinelli that her rent would be increased by $50.00 per month to $400.00 per month, commencing in April 2022. At this time, Defendant Masinelli also changed Plaintiff from a year-to-year lease to a month-to-month lease. Plaintiff has always paid her rent and is not in arrears in her rent payments to Defendants.

11. Plaintiff was formerly an accountant and a supervisor at Marathon Oil in Findley, Ohio. In or around 1990, she became disabled and unable to work. She has received disability benefits since that time. Plaintiff's sole source of income is Social Security Disability Insurance in the gross amount of $2,259 per month for 2022.

12. Plaintiff suffered a stroke in early 2018. She was hospitalized and then went to a rehabilitation facility. Shortly after her release from the facility, she contracted pneumonia, went back to a rehabilitation facility, and finally returned home in late 2018. After that, Plaintiff's symptoms of POTS increased, she was diagnosed with epilepsy, and she began to use a wheelchair. Because she had difficulty dressing, bathing, and feeding herself, the Illinois Department of Rehabilitation Services approved her for daily home health care through the Home Services Program.

13. Plaintiff's apartment doors have a lip that prevents Plaintiff from independently moving in or out of either door in her wheelchair. Plaintiff's apartment caught fire around July 2020 after an air conditioning unit overheated and ignited the premises. Because Plaintiff's apartment is not accessible, Plaintiff could not exit through the front or back doors, and she was trapped. Additionally, Plaintiff had no warning of the fire because the smoke detector did not go

off. Luckily, a fireman who lived nearby rescued Plaintiff after she called 911, and Plaintiff escaped without serious injury.

14.     The smoke from the fire damaged Plaintiff's apartment and her furniture. The smoke damage exacerbated her lung disease. Defendants refused to clean up the damage despite Plaintiff's complaints.

15.     Plaintiff suffered extreme anxiety and intense exacerbation of her PTSD symptoms following the fire. She feared becoming trapped in her apartment again. Since the fire, she has suffered persistent night terrors and constant fears for her safety.

16.     In addition, Plaintiff's POTS symptoms and her epilepsy escalated after the fire. Plaintiff can no longer stand or walk. Because Plaintiff uses a manual wheelchair, she frequently develops painful pressure sores, which have increased commensurately to her inability to stand or walk.

17.     Plaintiff cannot get into the tub in her bathroom without assistance, and the bathroom is so small that Plaintiff's personal care aide has great difficulty in helping to bathe Plaintiff. Plaintiff is unable to use the sink in the bathroom or kitchen. She cannot reach the tap from her wheelchair.

18.     Plaintiff and her home health care agency have explored the possibility of assistive living for Plaintiff. However, neither Plaintiff, her home health care agency, nor her doctor believes she requires assistive living. Despite its challenges, Plaintiff enjoys living in her own home in the community of her choice.

19.     In early March 2022, Plaintiff's physician prescribed an electric wheelchair to support her desire to live independently. Plaintiff expects delivery of her new wheelchair in mid-May 2022. However, Plaintiff is informed and believes her apartment will not accommodate an

electric wheelchair because there is no level path of travel from the street to her apartment. Because the electric wheelchair has a wider base than manual chairs, her electric wheelchair may not fit through her apartment door or her bathroom and bedroom doors. Plaintiff also requires a roll-in shower so that her home health worker can help her in bathing.

20.     After the fire in July 2020, Plaintiff complained to Defendants Russell and John Massinelli about the inaccessibility of the premises and repeatedly asked for accommodations and modifications. Plaintiff also contacted Cathy Contarino, the Executive Director of IMPACT, a nonprofit agency in Alton that promotes independent living for persons with disabilities. Ms. Contarino contacted Defendant Russell Masinelli on Plaintiff's behalf to complain that Plaintiff was trapped in her unit and needed accommodations and modifications. At that time, Defendant Russell Massinelli refused all requests from Plaintiff and Ms. Contarino.

21.     On November 27, 2020, Plaintiff's brother, Larry Zucksworth, appealed to Defendants to change their minds. Specifically, Plaintiff's brother sent a letter to Defendants requesting they provide her with reasonable accommodations and discuss modifications so she could remain in her apartment. Defendants never responded to this letter.

22.     In December 2020, Defendant John Masinelli visited Plaintiff's apartment, and Plaintiff asked him to make modifications to the premises again. Defendant John Massinelli told Plaintiff that he would "look into" the modifications and told Plaintiff, "We will see what we can do." Thereafter, Defendants did nothing and have otherwise ignored all such requests.

23.     When Plaintiff continued to suffer PTSD symptoms and severe anxiety, she contacted Equip for Equality, a federally funded Illinois protection and advocacy agency that promotes the civil rights of persons with physical and mental disabilities. On October 22, 2021, with the assistance of Equip for Equality, All About Access evaluated Plaintiff's apartment for

necessary modifications. When All About Access completed the evaluation, Plaintiff applied for and received a grant from the Illinois Department of Human Services ("IDHS") of twenty-five thousand dollars ($25,000) to make physical modifications to her apartment. The physical modifications include: flattening the lip to her apartment, widening doors to the apartment entrance and the doors to the bathroom and bedroom, installing a ramp, installing a roll-in shower, installing a pedestal sink, and installing a ceiling lift to allow Plaintiff to transfer from her wheelchair to her bed. These modifications are necessary for Plaintiff to continue to live independently. The modifications would not be visible from outside her apartment, would make the apartment safer, and would cost Defendant nothing. In addition, most of the modifications can be easily and cheaply removed at Plaintiff's expense when Plaintiff moves out of the premises.

24.  The foregoing grant for proposed modifications to Plaintiff's apartment was a relatively ordinary project for IDHS. IDHS provided many grants of less than $5,000.00 to Medicaid waiver recipients in recent years. IDHS provided approximately 50-75 grants in excess of $5,000.00 to Medicaid waiver recipients in the past year. The grant requires its recipients to agree to retrofit their apartments after their tenancies to return the premises to their original condition. These grants exist to provide individuals with disabilities with increased access to apartments and homes in the community. This program prevents unnecessary institutionalization, costs property owners nothing, and maintains the integrity and rentability of the premises.

25.  After final approval of the grant from IDHS, Plaintiff and representatives of the Illinois Division of Rehabilitation Services contacted Defendants to obtain their approval for the proposed apartment modifications. In August 2021, Defendants refused to sign off on the proposed modifications. Defendants did not give either Plaintiff or representatives of the Division of Rehabilitation Services any reason for their denial. Instead, Defendant Russell Masinelli told

Plaintiff she should move to an assisted living unit. In the past 8-10 years, no property owner has outright refused to sign off on such a modification grant agreement with the Illinois Division of Rehabilitation Services.

26. The IDHS grant remains available and will be accessible to Plaintiff if Defendants agree to the apartment modifications. However, Plaintiff is informed and believes that approval of the grant is time-limited and will be withdrawn if not exercised within a reasonable time.

27. In February 2022, Plaintiff contacted the building inspector of the Village of Marine, Keith Horn, about the inaccessibility of her apartment. Mr. Horn advised Plaintiff that her bathroom was not ADA compliant. Mr. Horn contacted Defendants to notify them of the lack of compliance. Defendants claimed they would discuss the situation with Plaintiff but failed to do so. Defendant Russell Masinell told Mr. Horn he preferred not to allow the modifications and did not want to "go through the hassle."

28. Immediately after Plaintiff contacted the inspector, Plaintiff received notice from Defendants raising her rent and changing her 12-month lease to a month-to-month lease. Plaintiff also fears additional retaliation by the Defendants in the form of a notice of termination of tenancy and eviction.

29. There are few available apartments in Madison County that are fully accessible to persons with disabilities. If she cannot maintain her tenancy, she may lose her independence and be forced to move to a nursing home or an assisted living facility that accepts Medicaid.

30. Defendants intentionally discriminated against Plaintiff and continue to discriminate against Plaintiff because she is disabled.

31. Defendants' refusal to grant a reasonable modifications request to permit Plaintiff to obtain the $25,000 IDHS grant to make her apartment fully accessible to her, without any

expense to Defendants, and allow her to enjoy her apartment and remain in the community is unreasonable and without justification.

32. Granting Plaintiff's reasonable modifications request is necessary to afford Plaintiff an equal opportunity to use and enjoy a dwelling in a residential neighborhood and would not impose an undue burden or expense upon Defendants.

33. Plaintiff suffered physical injuries, pain and suffering, extreme emotional injury, humiliation, embarrassment, and inconvenience because of the foregoing conduct of Defendants.

V.   **CAUSE OF ACTION: VIOLATIONS OF THE FAIR HOUSING ACT**

34. The allegations listed above are incorporated herein by reference.

35. The premises occupied by Plaintiff is a "dwelling" within the meaning of 42 USC § 3602(b).

36. Plaintiff is "handicapped" within the meaning of 42 USC § 3602(h).

37. Defendants' actions described above constitute:

   a. discrimination in the sale or rental, or otherwise making unavailable or denying a dwelling because of disability in violation of the FHA, 42 USC §3604(f)(1);

   b. a refusal to make reasonable modifications to the premises, at no expense to Defendant, when such modifications are necessary to afford a person an equal opportunity to use and enjoy a dwelling in violation of the FHA, 42 USC §3604(f)(3); and

   c. interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise of enjoyment of rights granted or protected by the FHA in violation of 42 USC §3617.

38. Defendants' actions described above were intentional and taken with willful disregard for Plaintiff's rights.

39. Plaintiff is an aggrieved person, as defined in 42 USC § 3602(i), who has suffered economic loss, emotional distress, and loss of her civil rights as a result of Defendants' conduct.

40. Plaintiff is without an adequate remedy at law.

41. Plaintiff will suffer irreparable harm if Defendants refuse to grant Plaintiff's modifications request and immediately approve the IDHS grant so that Plaintiff can continue to reside at the premises.

## VI. PRAYER FOR RELIEF

42. WHEREFORE, Plaintiff prays that this Court enter an ORDER:

   a. Declaring the actions of Defendants Masinelli Management and Construction Inc., Triton Enterprises Corp., Russell Masinelli, and John Masinelli are actions that violate the Fair Housing Act;

   b. Granting a preliminary and permanent injunction enjoining Defendants to immediately approve the IDHS grant and take any actions necessary to permit structural changes and modifications to premises and to refrain from terminating Plaintiff's tenancy or commencing eviction proceedings against Plaintiff during the pendency of this proceeding;

   c. Awarding Plaintiff such compensatory and punitive damages as would fully compensate her for her injuries caused by Defendants' discriminatory housing practices;

   d. Awarding Plaintiff her costs, expenses, and reasonable attorney's fees; and

   e. Granting any additional relief as the Court deems just and proper.

## VII. JURY TRIAL DEMAND

43. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

By: *Sarah Jane Hunt*
Thomas E. Kennedy, III
Sarah Jane Hunt
Nicole Matlock
KENNEDY HUNT, P.C.
4500 W. Pine Blvd.
St. Louis, MO 63108
(314) 872-9041
(314) 872-9043 fax
tkennedy@kennedyhuntlaw.com
sarahjane@kennedyhuntlaw.com
nmatlock@kennedyhuntlaw.com

By: *Susan M. Simone (with consent)*
Susan M. Simone
Kendall Reeves
Daniel Blair
LAND OF LINCOLN LEGAL AID
Dorothy Cook Community Law Center
8787 State Street, Suite 201
East St. Louis, IL 62203
618-398-0574
618-398-4813 fax
ssimone@lincolnlegal.org
kreeves@lincolnlegal.org (Admission Pending)
dblair@lincolnlegal.org

11